Calling case 17-1092, Artur Zawada et al. v. Uber Technologies Inc. et al. Oral argument not to exceed 9 minutes for appellants, 6 minutes for amicus and LRB, and 15 minutes for the appellees. Oscar Rodriguez for the appellants. Good afternoon, your honors. Oscar Rodriguez of Ann Arbor, Michigan, on behalf of plaintiff appellants. Your honor, it's a privilege to be here and to be heard by the court. I would like to reserve two minutes of time for rebuttal. I also, I think, was acknowledged by the clerk, Mr. Heller of the NLRB, has been seated 6 minutes for argument as amicus. Your honors, I can't lose focus as to the reason we're here today. We filed this class action on behalf of Uber Drivers, which by my last research, amounts to about 164,000 employees nationwide, according to a Wall Street Journal report. Among the relief sought, your honors, we were looking for the drivers to be made whole for the millions of instances where Uber manipulated the software system that they use to interface the drivers and the customers to deprive the drivers of what could be millions of dollars in wages. We're not dealing with a situation here where a phone company takes pennies from your phone bill or dollars from your phone bill. This is a situation where Uber, as a company, is systematically and secretly stealing money from its employees, dollars at a time. But what's worse, and I think it's more to the issue in this case, is that it tells them that they have to individually arbitrate any challenges to these practices. In our view, this removes any meaningful remedy for these exploited drivers. Your honor, we're dealing with a company that was recently banned by the City of London, which adds to a growing list of cities, states, and countries around the globe. Counsel? Yes, your honor. What do you do about the fact that the agreement, which your clients chose not to opt out of, provides that these types of questions should be decided by an arbitrator? Your honor, the way we see this is that the court in the Alternative Entertainment has already spoken in the Sixth Circuit and said that these provisions are unenforceable as a violation of the National Labor Relations Act. In our view, at this point, there's nothing to delegate to the arbitrator if that issue has been resolved. Well, Alternative Entertainment did not involve a provision that included an opt out. I mean, your clients were told, you don't have to do this, you don't have to agree with this, and this is what you're giving up. So it's distinguishable on that basis. Your honor, if I may, the Alternative Entertainment case, as I read it, doesn't carve out an exception for an opt out. So it says that these types of agreements are unenforceable because they curtail, I guess. But was that not a mandatory agreement, a mandatory arbitration provision? In Alternative Entertainment, yes, your honor. But as we will get into further in the presentation here, I don't think that the opt out really saves this agreement. And the reason I say that, and Mr. Heller will talk more about the Anna Simon case, but my understanding is that the opt out agreement in this particular case has the same effect of being mandatory because it requires employees to essentially have to opt in to protect their rights under that Section 7 of the NLRA. And that's not what the NLRA is designed to do. It is the default rule. By having this opt out that's put in this agreement that's sent to the drivers on their phone and asked to sign electronically, I think we're asking them to opt in to the NLRA rights, which is just not, I believe, what the law is. And I think that requiring them to take this additional affirmative step is essentially the equivalent of having it be mandatory. That's our position on that issue, your honor. But why is it that the arbitrator can't decide that? Can't decide what question? The question that you've just answered, the question whether it matters that there's an opt out. I mean, if the contract contemplates an arbitrator making the decision on the validity or legality of the arbitration provisions, why isn't the case that the arbitrator should do that in the first instance? Oh, yes, your honor. I failed to move on to the second point of answering that question, which is that we believe that this particular delegation clause is not within the scope of this clause. It doesn't include employment status, which is what the issue before this court. Have you appealed that issue? I thought the only issue you appealed is the defense of the NLRB. I mean, reading your brief, you cite one issue, and you say that this clause violates. And, your honor, because in the focus of our brief, it's a good question. No, not the focus. The one issue. That's all we decided. Well, the focus of our brief, in our view, is the alternative entertainment case. And I think that that is what is resolved in favor of plaintiffs. I'm trying to make, I guess, the argument now with respect to the delegation clause, but I do understand that the focus of our brief was the central issue with alternative entertainment. So the focus of your brief, you're saying, is whether or not the arbitration agreement is unenforceable because of the waiver provision, and you say that violates the NLRA. Is that what's before us today? Yes. Why wasn't that waived? Because it really wasn't raised properly before the district court. Well, your honor, Uber, my understanding of the rule, and frankly, we found the Lewis case on the eve of oral argument. I've been out there for a while longer than that. Well, I understand that, but my understanding is that the waiver rule applies in situations where the issue was first raised on appeal and just absolutely not raised at the district court. But you raised it as a supplemental authority. Well, your honor. You didn't raise it as part of your argument, but as supplemental authority. I don't even think it was. Well, if I may, your honor, at oral argument, we spent half of oral argument on the NLRA issue. Uber's counsel was asked whether or not additional briefing was necessary, and I have a quote from Uber in Mr. O in oral argument where he expressly says, no, we don't need that. The law is clear. And if Uber at that situation, and I know that they're making the argument that we've waived, but, your honor, they had an opportunity. They weren't prejudiced by it in any way in this particular case because the first thing we did is we asked the court to give us an opportunity for further briefing. Uber's counsel said that's not necessary. And that's why I think it changes it from the Mohammed case in Ninth Circuit. Does the district judge have to give you an opportunity for supplemental briefing? I mean, if you don't brief a defense originally, I assume it's discretionary with the judge whether he's going to exercise discretion and allow you to have supplemental briefing to raise new issues. Your honor, I don't necessarily disagree with that. I can tell you from being at oral argument. It's hard to see it's an abuse of discretion. I think also that the judge spent four pages of her opinion addressing the LRA issue. Well, her opinion, first of all, says it's waived because it was not properly raised. And then the judge goes on to say, well, even if it had been raised, I find this and that, that it doesn't have merit. But the initial ruling is that it was waived, right? Yeah, can I just, I know my time's up here. So Uber, in our view, had a very meaningful opportunity to address this issue just like we did, and we spent most of oral argument, in fact, all of oral argument almost dealing with this issue. And that's all I can say about it, your honor. Thank you. Thank you. Good afternoon. May it please the court, Joel Heller for the National Labor Relations Board as amicus. This court held in alternative entertainment that prospective individual waivers of the Section 7 right to engage in concerted legal action violate the NLRA and are thus unenforceable. This issue is now up in the Supreme Court, is that right? Yes, it is. The Supreme Court heard oral argument October 2nd in the Murphy Oil case. The presence of an opt-out mechanism does not rehabilitate that otherwise unlawful policy for two reasons. First and primarily because Uber's policy has the same impact on Section 7 rights and the policies underlying the NLRA, regardless of whether it was entered into voluntarily. And that is why the Supreme Court, courts, and the board have held in various contexts that a policy that interferes with Section 7 rights violates the NLRA even if agreed to voluntarily. For example, the national licorice case cited and relied upon by this court in alternative entertainment. Since the issue is up at the Supreme Court, argument has already been held, would it be prudent for us to hold this in abeyance for their decision? I think it would. And that, in fact, is what several other courts have done, including the Ninth Circuit and the Fourth Circuit have heard argument on the opt-out issue but have stayed those cases pending a decision from the Supreme Court in Murphy Oil. If the court is inclined to address the issue, however... Well, to do it, we'd have to find, first of all, it wasn't forfeited below, and I saw it from your brief that you take no position on that issue. Correct. Okay. Didn't the Ninth Circuit say it was okay? Judge White, do you mean the opt-out provision in the John Mohamedy case? Yeah. So in the John Mohamedy case, two things about that. First of all, it predates the board's decision in on assignment where the board addressed the issue of whether an opt-out rehabilitates the otherwise unlawful policy. And so it is under Brand X administrative law principles. It's no longer necessarily binding on the Ninth Circuit. They would be able to address the issue anew when the question is deference to the board's decision in on assignment. So that's part one. Part two is that the Ninth Circuit actually did hear argument on the opt-out issue in September in a case called O'Connor v. Uber, and that is the case I was referring to to Judge Griffin earlier that is now held in abeyance pending the Murphy Oil decision. How does the delegation clause play in? Because an arbitrator would be equally capable of looking at this and saying, look, you know, the law says these provisions are illegal. I mean, why, if you have a delegation clause, why don't they have to go through that route? Judge White, the board doesn't take a position on whether the delegation clause applies in this case. The board's position is if the court is going to address the issue, it should find that the opt-out does not save what this court found in alternative entertainment to be an unlawful policy. And going back to that National Liquor case I was discussing earlier, the individual contracts that the Supreme Court found to violate the NLRA in that case were not a condition of employment. We know that because only some of the employees signed them. The same was true of the contracts in the J.I. Case decision, and the same also was true in the Supreme Court's Patternmakers decision, which involved a union rule restricting the ability of union members to resign. The court said that was in interference with Section 7 rights and emphasized that its holding in those cases was not limited to rules that compel employees to do something, but also when they were entered into voluntarily. It's also important to note that this is a prospective categorical waiver. Employees are forced to make this choice at the outset before they are faced with any particular workplace dispute. Are most arbitration provisions in contracts prospective? I can't say if most of them are. The one in alternative entertainment was, and this one is. That goes against the Supreme Court's description of Section 7 in the Granite State textile workers case where it says that the vitality of Section 7 requires that employees be able to make context-specific choices as to whether to engage in concerted activity. In the words of the court in that case, an employee must be free to refrain in November from actions he endorsed in May. And just so here, an employee must be free to join a concerted activity in November even if she in May decided not to when circumstances were different. You said employee, and that's one of the issues here is whether they're employees or independent contractors. You take no position on that issue as well, right? Correct. But if they are independent contractors, then of course this defense doesn't apply, the alternative entertainment defense, right? That's correct. This only applies to statutory employees. Okay. I'm probably asking the wrong party. But it seems like the issue of whether someone is an employee or independent contractor is the sort of question that arbitrators often decide. And the argument here is that it's not suitable for the arbitrator, but it usually is. But I'll ask the other side about that. Right. I believe that would be a question for Zawada's counsel. One last point before I finish. I have a question. What is the remedy? Is the remedy to say, okay, the arbitration clause still trumps, but you can arbitrate collectively? Or is it just to say it's as if it doesn't exist? Right. So as was clear in the court's decision in alternative entertainment, the problem with these individual arbitrations provisions is not that they provide for arbitration. It's that they require employees to act individually in any forum, regardless of the forum. So in the context of this particular agreement, whether that would mean the availability of group arbitration or having it to go into court, I'm not sure. But yes, the government of the board's problem with these kind of agreements is the individual part, not the arbitration part. So you would leave that to the district judge to decide? Yes. Yes. I see my time is up, so thank you for allowing the board to participate in this case. Thank you. May it please the court. My name is Theana Evangelos, and I represent Apelli Uber Technologies in this appeal. The court should affirm the district court's decision granting Uber's motion to compel arbitration pursuant to the voluntary arbitration agreements between plaintiffs and Uber in this case. That is the same result that 20 other federal courts have reached since last spring in lawsuits between Uber and drivers who've used the Uber app, including the Ninth Circuit in Mohammed and the Eleventh Circuit in Suarez. And the court should reach the same result here for several reasons. First, plaintiffs waived all of the arguments that we just heard about on assignment and the NLRA. On appeal, they've abandoned every single one of the arguments they relied on below, including the challenge to the delegation agreement. Instead, the sole issue that they're asking this court to address and decide on appeal is an issue they did not properly raise below, and that's whether voluntary class waivers are invalid under the NLRA, and more specifically, whether the court should grant Chevron deference to the NLRB's vacated decision in on-assignment staffing. They never mentioned on-assignment staffing below. They never mentioned Chevron deference below. In fact, the NLRB's amicus brief before this court acknowledges as much. That issue was never addressed. So even if Lewis was mentioned in a notice of supplemental authority, which was improper and didn't properly preserve the issue under this court's precedence regarding waiver and the rules that it applies to such preservation issues, plaintiffs never even mentioned the on-assignment decision. How about at oral argument? What was argued at oral argument in district court? Well, Your Honor, the transcript is not in the record. I understand that there was argument on Lewis. The transcript's not in the record. All right. That's probably why I don't know. I understand from counsel's representation that there was some argument on it, and the district court did as you... If it's not in the record, we're not going to consider it. The appellant has the obligation to make the record and to bring the record to us to establish error. All right. That's correct. And also, as the district court recognized, so the district court viewed the issue, as Judge Griffin, as you noted, viewed the issue as waived because it wasn't properly raised. In this court, in cases such as Scottsdale Insurance versus Flowers, held that issues that are raised but raised improperly in the district court are, in fact, waived. But the district court addressed it too, which doesn't often happen. That's correct, Your Honor. The district court did address it, but there was not any mention of on-assignment staffing, which is the issue that the NLRB has briefed and that plaintiffs are really focused on before this court. There was never any mention of that. So that is the primary reason, and that's also the reason why there's no need to hold the case in abeyance pending the Supreme Court's resolution of the appeals in Lewis, Morris, and Murphy Oil, although, of course, that is a path that's available. But we believe it's unnecessary here because of the serious waiver problems. And I'll move on to the next issue, unless Your Honors have questions about what I've just discussed. Another problem for plaintiffs here is the delegation clause that they, by their own logic, they say that they're bound by the 2014 agreement. That agreement contains a very express delegation provision that delegates threshold questions of arbitrability, such as the enforceability of the class waiver to the arbitrator. So, again, they haven't challenged that on appeal. So that's another problem that they face. How about the threshold issue of whether they're independent contractors or employees? Is that subject to the arbitrator's decision as opposed to the court's? We believe it should be, Your Honor, and that's another problem here because— That's the only way to get to the NLRA defense is if they are employees, right? That's correct. And if they're determined to be independent contractors, that defense just isn't applicable. That's correct. The NLRA would not even apply. And plaintiffs, because they're challenging an arbitration agreement, they do have the burden to prove that their claims are not suitable for arbitration, so they have to make some sort of showing in opposition to a motion to compel. They made no showing whatsoever to dispute the very clear provision in the licensing agreement that they entered into which states that they're independent contractors. So the only evidence we have in this record is that agreement which states they are independent contractors. So for that reason, the NLRA wouldn't even apply, but because it's a question of arbitrability and a threshold issue, we believe that it would be proper for the arbitrator to decide and not a court. And that's, in fact, what several district courts have done in other cases that we've cited and one is the Northern District of Illinois case in Olivares and the other is the Southern District of Florida in the Lamour case. They reached that same conclusion. So with all of those problems facing them, there really is no need to address the question that the NLRB has just argued and has presented to the court, but I can also address that if your honors have any questions. But here, again, the key issue is that this agreement is voluntary. So apart from all of the other problems, this is not like the agreement in alternative entertainment. Judge Batchelder, you made this point. It was a mandatory agreement in that case, and here this is voluntary. So the court's decision in alternative entertainment very clearly addressed only mandatory agreements. And as the Ninth Circuit correctly held in John Mohammadi, that precludes any violation of the NLRA. And for that reason, we don't even get beyond the text of the NLRA because under Section 8, the only problem for the NLRA purposes is conduct that restricts, interferes with, or coerces employees from exercising their rights. But because there was the ability to opt out, and indeed we know that many drivers did opt out, there was no coercion or interference. The cases that the Supreme Court has granted cert on, is there an opt-out provision or not? No, your honor, those are mandatory agreements. So if those agreements are enforceable, then of course certainly these agreements are enforceable. But we believe they're enforceable in any event. And again, also under Section 7 of the NLRA, employees, if you're dealing with employees, have a right to refrain from engaging in collective action. So again, by agreeing to arbitrate any claims individually, an individual can refrain from class litigation. And so the NLRB's decision in on-assignment staffing violates both provisions of the NLRA. Do you have any cases that affirmatively, any Supreme Court cases that affirmatively state that they can waive their right to collective action beforehand? Your honor, not at my fingertips, but I will address the cases that the NLRB has cited. And those cases are national licorice and the J.I. case, which they've cited. And the Ninth Circuit in John Mohamedy made this point that those cases are distinguishable because there the individual agreements were a means of effectively eliminating a union altogether. So it wasn't an issue of what forum or what process claims would be made or brought in court. It was about eliminating a union altogether. So those cases are distinguishable. And the Department of Justice also made that argument in its brief before the Supreme Court because the NLRB has cited those cases. And, of course, the NLRB does not get deference on the interpretation of judicial precedence. So I expect that the Supreme Court has been presented with those cases and may address that argument. But going back to the waiver here, and we believe that it would also, giving deference to the NLRB's decision on assignment, would not accommodate or even consider the goals of the FAA. And, in fact, another point that's worth making is that the NLRB's argument that merely opting in or opting out of arbitration is effectively opting in to the potential of class litigation, if that is so burdensome, then I don't see how the FLSA, with its opt-in procedure, which is well accepted and hasn't ever been challenged by the NLRB, how that isn't also a similar interference or restriction on an employee's rights to engage in collective litigation. Of course it isn't. So we believe that the same logic would apply here. I'm sorry. Isn't that a statutory procedure? I'm not following you. Yes, it is, Your Honor, just like the FAA is a statute regarding arbitration and the ability to – But people opt in to – I guess I'm not following you. There you already have a dispute. Yes, Your Honor, but the forcing an employee to take the affirmative step of opting in is effectively the same as requiring an employee to opt out of an arbitration agreement. So that's an analogy that I'm making, and, again, the Department of Justice has also made that analogy and others as well. But I would like to address any other questions that the Court might have, but I don't believe it's necessary to get into any of these issues. They are complex and complicated, and the Supreme Court is considering the validity of mandatory arbitration agreements, and that's precisely why we have waiver rules. And the Court, in numerous cases, this Court has held that unless an answer is so clear and beyond dispute and there would be a manifest injustice, we don't need to address, and, indeed, we don't address issues that were never raised properly in the Court below. So for all of those reasons, we would ask that this Court, like the 20 other federal courts that have considered these arbitration agreements and various challenges to them, that this Court enforce the parties' agreements and affirm the district court's order. Thank you. Thank you. Profoto? Your Honor, first I'd like to clarify the issue of whether the transcript's in the record or not. Both parties have designated the transcript in their briefs. Further, I do want to read the quote from oral argument by Mr. Ouber's lawyer. Quote, I don't believe that we need to do supplemental briefing on Lewis. This is the Seventh Circuit case dealing with NLRA. It seems that Your Honor has a pretty good understanding and grasp of the issues. And so, of course, if you allow him to submit a supplemental brief, we would like to respond back, but I don't think it's necessary. It's pretty clear where the law is on that. Three or four months later, four or five months later, alternative entertainment came out. We didn't bring up on assignment because we didn't need to necessarily bring up on assignment at that time. Lewis was the case that we could point to in the circuit courts. Alternative entertainment wasn't decided yet. After our decision in the district court is when we filed the briefing and we brought up alternative entertainment in our briefs. Your Honor, but I also, because my time is short here, I wanted to address this question of why can't the arbitrator decide the issue of independent contractor versus employee. The main problem we have is not that the independent contractor is going to decide that issue. It's that the independent contractor should not. It's illegal for the Ouber to force the employees to pursue that issue individually because if we have that issue be pursued individually, it has the same exact effect of prescribing the Section 7 rights. So we can't have Ouber at every turn get around the NLRA by saying this question of fact or this legal question needs to go in front of the arbitrator individually. I don't think we have a problem, the plaintiffs, doing arbitration as a group. The problem is that it's individual and it's just not the same case. You're saying the threshold issue of whether they're independent contractors or employees is for the court to decide? Somebody has to decide. Just because you allege it in your complaint that they're employees doesn't establish the fact, does it? Correct. The problem is not that the court or the arbitrator would decide that question. The problem is that it's got to be done individually according to Ouber's position, and that's where we're prescribing Section 7 from these employees. How? I mean, were all the drivers in the same situation? It seems to me that usually employment relationships are based upon the control, and I guess you're saying the control aspect is the same for every driver? Well, they have their policies, and I can go into them. They tell you what type of car, what type of insurance requirements, how you're going to be able to accept a customer's ride. You can't just choose your own customers. You've got to go through their app. Those are the types of things that we would argue. But we're fine doing that in front of an arbitrator. It's just we have a problem doing it individually because we don't have the collective action. So collectively the arbitrator could determine whether all the Uber drivers or employees are independent contractors? You wouldn't have any problem with that? Well, yeah, because then our Section 7 rights aren't curtailed because, in fact, the NRA encourages arbitration. So it's about collective versus individual. Okay, so to answer my question, you would be fine with the arbitrator determining collectively whether all the drivers are employees or independent contractors? I'd say yes, but to the extent that all the workers can proceed together. But Uber wants all the workers to go separately, and that's our problem with this agreement. And what is your answer, not to the question whether the arbitrator can decide employment status, but whether the arbitrator can decide the legality of forcing individual arbitration? I'm not following that question, Your Honor. Well, it goes to the delegation clause, which you don't seem to be addressing. Why doesn't the contract require that the arbitrator decide whether the individual part of the arbitration agreement is enforceable under the law that's developed? I think if I understand you correctly, I think if we apply it that way, each of these employees will have to go in individually, and that still has the same outcome. So if Uber were to agree to let our drivers collectively arbitrate, I don't think we'd be here necessarily. But the issue is we can't collectively arbitrate. We have to go individually. Thank you, counsel. The case will be submitted. Thank you. Clerk may call the next case.